We'll hear argument this morning in Case 21-1164, Wilkins v. United States. Mr. McCoy. Mr. Chief Justice, and may it please the Court, this Court has repeatedly held that when Congress wants to make a time bar jurisdictional, it must clearly state so. In passing the Quiet Title Act, Congress did not clearly state that the statute of limitations is jurisdictional. Instead, the text, context, structure, and history indicate that Congress intended the statute of limitations to be a non-jurisdictional affirmative defense. In its briefs here, the government does not argue that Congress clearly stated that the statute of limitations is jurisdictional. Instead, it points to offhand use of the word jurisdiction in this Court's term. And it wasn't until recently that this Court brought discipline to the use of the term. Prior to that, courts and litigants often used jurisdictional to refer to mandatory but non-jurisdictional time bars and other prescriptions. That is what happened in Block and Motaz. Nothing in those cases indicate this Court was using jurisdiction in the fundamental sense. The issue was not presented to this Court. The parties did not cross swords over it. And the outcome did not turn on subject matter jurisdiction. As a result, whether the Quiet Title Act's statute of limitations is jurisdictional is an open question. And because Congress did not clearly state it is, courts, including this Court, should treat it as non-jurisdictional. I welcome the Court's questions. Mr. McCoy, going beyond the text just for a bit, what do you do with the fact that the statute of limitation occurs in the context of a waiver of sovereign immunity? Well, Your Honor, as this Court has said in Wong or as this Court recognized in Beckler last term, a waiver of sovereign immunity is not necessarily a jurisdictional prerequisite. And what this Court has done is it has construed statute of limitations and other time limits when there was a waiver of sovereign immunity strictly. But construing it strictly is different than jurisdictional and whether it is a jurisdictional time bar. But I think, haven't we been quite careful to treat the conditions to waiver of sovereign immunity as jurisdictional or mandatory? Well, mandatory, yes, Your Honor. But mandatory is different than jurisdictional. And the time bar was non-jurisdictional. Even found there was equitable tolling in that. And in terms of how this Court has viewed waivers of sovereign immunity, it certainly has strictly construed waivers of time bar. But again, that is a separate question than whether or not it's jurisdictional. Counsel, you and your friend on the other side both rely on this Court's opinion in And I'm not sure why it matters to you whether it's a jurisdictional ruling or simply a ruling about equitable estoppel. Either way, I mean, maybe you're right on jurisdiction, maybe you're not right on jurisdiction, but either way you lose. Because the one thing Beggarly was quite clear about was that there was no equitable estoppel. It went through and gave the reasons for that under the Quiet Title Act. What your client is looking for is equitable timeline. But whether you're right in Beggarly about jurisdiction or not, you still lose, right? No, Your Honor. And in Beggarly, this Court said there was no equitable tolling. But as Justice Stevens recognized in his concurrence, this Court left open the question of whether there is equitable estoppel, which are distinct equitable doctrines that excuse the statute of limitations. But beyond that, whether or not this is jurisdiction, if it's jurisdictional, the plaintiffs have the burden of proving jurisdiction, while if it is a non-jurisdictional affirmative defense, then the government would have the burden of proving. Yeah, but they're not going to have any trouble carrying that burden because Beggarly says quite clearly that whether jurisdictional or not, you don't get to 12 years is 12 years. You don't get beyond that. Your Honor, there are disputed facts. And because the Court treated it as a motion for lack of subject matter jurisdiction under the standards of review in the Ninth Circuit, the Court did not have to engage in these disputed facts. And in particular, the Court relied on a 2006 order. We had presented declarations that that order was not posted. We had presented declarations that were contradictory to how a reasonable person would interpret the maps, including statements from the Bitterroot National Forest itself that said that those maps were unclear. And that is why they engaged in the travel management process. And we, because it was a jurisdictional burden, the district court did not engage with those disputed facts. And as a result, we did not get past the motion to dismiss stage, did not even get to a motion for summary judgment to be able to make those claims. And to determine whether or not we would lose, this Court only needs to look at the magistrate judge's findings and recommendations and compare them to the district court's findings and recommendations. Counsel, a quiet title action is tried by a judge, correct? Yes. Not by a jury. And the judge here said all of the evidence you pointed to, it looked at and said it considered all the evidence that you provided and the government provided and that it was, quote, abundantly clear that a reasonable person would have known of the government's adverse claim. So I don't know, whoever bears the burden, that was the Court's findings. So I don't know how you win, but you're going to have to explain that to me and go back to Justice Roberts' question, which was, even if I give you that Justice Souter and Stevens thought that Begley only dealt with equitable tolling and not equitable estoppel or fraudulent concealment, what facts do you have to claim equitable estoppel? I always thought this was a tolling case, not an estoppel case. Well, Your Honor, first, just to the question of whether the statute of limitations has run, as the Court said, this is at Cert Appendix D3 of the opinion, that when resolving a motion to dismiss, the Court did not have to hold an evidentiary hearing. And again, as I said, for the 2006 order, we have declarations that dispute that, and we do think that an evidentiary hearing to weigh the credibility of witnesses is necessary for that. As to equitable estoppel, again, this is on JA6. There was some testimony from a Forest Service official that said that he told Mr. Wilkins to participate in the travel management process, and then, and this is on Joint Appendix 32, the Bitterroot National Forest proposed that the road would be decommissioned. And with that, Mr. Wilkins decided not to sue at that time because he had recognized the problems, and this was the travel management process. Exactly, but I don't think any representation of that kind has ever been considered equitable estoppel. An adverse party telling you, let's try to work this out, doesn't mean you make a choice of whether to sue or not. They're not telling you, don't sue. Your Honor, under equitable estoppel, if the adverse party makes representations that it will be resolved, that is one factor in the analysis for equitable estoppel. And again, but also there are facts, even putting aside the equitable estoppel, there are disputed facts over what a reasonable person would have viewed for this, for these maps, and there are disputed facts over the 2006 order that were not resolved because the court treated this as a jurisdictional statute of limitations. Mr. McCoy, was there a time when this court regarded sovereign immunity as tied to subject matter jurisdiction? Your Honor, as this court said in John R. Sand, prior to Irwin, there was an ad hoc approach, and as I said, certainly a waiver of sovereign immunity, this court views waiver of sovereign immunity strictly, but it was still an ad hoc approach even for, for example, in John R. Sand, what was that issue, was the previous cases for the court of claims statute, which became the Tucker Act, and it looked, the previous cases also applied an ad hoc approach to that, and there are distinguishing factors from the court of claims statute and the Quiet Title Act, namely that Congress created its own court, an Article 1 court, to hear those claims. They are unique claims that arise under the Fifth Amendment, unlike Quiet Title Act claims, which are, were available at common law, which every state has, and that is some of the factors that indicate that Congress intended, when passing the Quiet Title Act, to treat it as normal, normal quiet title action. Well, there are cases from earlier times when the court seemed to regard sovereign immunity as tied to subject matter jurisdiction. For example, United States v. Sherwood, 1941, the court said, quote, the United States as sovereign is immune from suit save as it consents to be sued, and therefore, the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. So, if that was the court's view at one time, what does, what effect does that have on our interpretation of cases like Block and Motaz? Your Honor, I would disagree to that. Again, jurisdiction is a word of many meanings, and that line that you quoted was also quoted in Lehman v. Naxchian, which 453 U.S. 156, and it quoted the same line, but in that case, in Lehman, subject matter jurisdiction was not at issue. The issue was whether a plaintiff in a federal age discrimination case had the right to a jury trial. This court quoted that language that Your Honor quoted, and as more of a canon of a construction to interpret this statute strictly, and held that because Congress had not explicitly allowed a jury trial, a jury trial was not allowed. This court has used that language and has used jurisdiction in many different ways. Well, if you're looking at the ways it's used, does it make a difference? I mean, certainly we've articulated correctly, set forth the test that we've articulated, and it makes a difference. The application is pretty direct going forward. The people across the street are on clear notice that they've really got to spell it out if they want one of these time limits to be jurisdictional. But that was not the case when you're applying that sort of clear statement requirement to prior cases. Congress wasn't on notice that it had to be particularly clear about the jurisdictional import of these limitations prior to the time we told them they did. In fact, that test we applied, I think, was departed quite a bit from some of the prior precedent. And you're right. Jurisdiction is a word of many meanings. We've said that many times. But going forward, the answer is pretty clear. I mean, it's a whole different thing, isn't it, when you're applying that test to the past? This court rejected a very similar argument last term in Beckler. And I believe the court referred to that argument as the weakest of the commissioner's argument in that case, that Congress intended to incorporate these views, and especially views of appellate courts, when it adopted the provision at issue in Beckler. And what matters, I think, is, as John Arsand, whether there was a definitive earlier interpretation. And this court in Reed Elsevier and Arbaugh set out some factors for how you would determine whether it was a definitive earlier statement. In Arbaugh, it was if the issue was raised, if the parties crossed swords over it, whether the outcome turned on it. Mr. McCoy, can I just ask you, can you help me to understand why it matters whether there is a definitive interpretation? I understand that John Arsand said that, but I guess I'm just struggling with, similar to questions that have already been asked, what difference it makes that, in the past, the court allowed for the determination to be made on an ad hoc basis. If today, when the question is being asked, we have a clear standard, we're looking for a clear statement, and it seems, as even the government in this case suggests in its brief that if we apply that test today, it comes out in a certain way. So what difference does it make that, way in the past, we had a different way of figuring this out? Your Honor, I do not think it does. The key question is whether it's a matter of first impression for this court, and that's where John Arsand comes in. As Wong recognized, if this court has made a definitive earlier statement, then this court will follow it. But again, yes, you're correct. But I guess that my question is, why should we follow it? Is that just to suggest that we can't have new tests that apply to current determinations that we've previously addressed in the past? Yes, Your Honor. This court can apply the new standards. And the only question then, and it seems that my friend on the other side, as Your Honor pointed out, does not really engage with the test that this court now applies. The only question is, has this court held that the statute of limitations is jurisdictional for stare decisis purposes? Well, I mean, it's — when you're saying we'll have a new test, the original determination was a ruling on what Congress did, what Congress meant, how to interpret the statute. Now, do we, when we're adopting a new test, are we going back and saying we were wrong in Your Honor, I would say that Block and Motaz do not even opine on whether the statute of limitations is jurisdictional. As this court said in Reed-Elsevier in footnote 8, if the legal character of the rule was not at issue — So you're saying that sort of the hypothetical or whatever I'm posing isn't presented, and I understand that, because you think it was not clearly established. But do we transport ourselves back in time and try to say whether that was true when the court decided the case, which is kind of an — I'm not sure whether our test requires that or not, but it's kind of an awkward inquiry. Because now we go forward and say, well, Congress knows they've got to be clear, and if they haven't been clear, the answer is easy. But back then, Congress didn't know it had to be clear. And we were put to what might have been — our predecessors — a harder question of what did Congress mean in this case. But if they did reach a decision, and you say they didn't or that we didn't say they did, do we go and do that over and say, well, we said previously it was jurisdictional, but now we're going to say it's not, because when you apply a case — a principle 80 years down the road, it turns out the answer is different? Your Honor, this Court said no in Beckler. It said that opinions — and, yes, it was the use of the word jurisdiction. It's retroactive discipline. Yes, Your Honor, because jurisdiction, and as this Court admittedly holds, has been inexact when it has used jurisdiction. And so — and as this Court said in Eberhardt or — and in Kondrick, that this Court has sometimes used jurisdictional to mean mandatory. And that — see, that is what this Court was indicating in Block. In Block, it said that what this Court said was that the district court had to engage with a valid affirmative defense. The question presented was, is a statute of limitations a valid affirmative defense when the — when the plaintiff is a State? This Court said yes and remanded for that. Well, in Block, the Court said, quote, if North Dakota's suit is barred by the 12-year time limitation, the courts below had no jurisdiction to inquire into the merits. Now, if the Court had said the courts had no subject matter jurisdiction to inquire into the merits, would that decide this case? That would be a stronger indication because the Court would — would have clearly been saying subject matter jurisdiction. But in Block, as Judge Easterbrook said in his opinion in Wisconsin Valley, Block is another example of this Court using the term jurisdiction loosely. And that is why the Seventh Circuit did not feel bound by Block. Well, if it had said subject matter jurisdiction, you said that would be stronger. Would it not be dispositive? Unless we're going to say that Block is — that we're overruling Block, or Block has already been overruled? Yes. I think if it had used subject matter jurisdiction in — Okay. So — I think you're giving too much away there, Mr. McCoy. Well, maybe — maybe Mr. McCoy could answer my next question, which is — Justice Kagan and I like to ask each other questions. I'll reciprocate. But anyway — Well, you haven't even given me a chance yet, but okay, go ahead. Now I've forgotten what my next question is. Well, let me — let me rephrase my answer. No, no. I know. It's come back to me. So are you advocating a magic words test? So if Block says subject matter jurisdiction, okay, that's stronger, or maybe as strong as it can get, but they have to use — in interpreting a past decision to determine whether the Court was talking about subject matter jurisdiction or a mandatory clearance processing rule, they have to use the magic words? No, Your Honor. And even — even using subject matter jurisdiction, this was a similar situation that was in Arbaugh, where the Court had referred explicitly to subject matter jurisdiction in the previous Title VII cases, and this Court held in Arbaugh that that was not. And I — overall, if — one of the key questions is, if this Court were to overrule Block, what would it overrule? This Court overruled its holdings. The holding was that the Quiet Title Act Statute of Limitations applies to states. That was not the holding. So there really is nothing to overturn in that — in that case. And maybe Justice Kagan wants to ask you a question. No, I'm good. I'll ask a question then. I'll jump in. So I'm still sort of interested in the Chief Justice's points about the rule of decision and how it is that we determine whether or not something is jurisdictional and that we used to do it in a different way in the past, and now we have a clearer standard. And it appears that from Beckler, we said, well, we don't go back and do it over again. But I guess I'm wondering, if we don't do it over, how do we get everybody on the same page around this kind of determination? It seems to me that you could then have — if we say — if we've spoken to this in the past, jurisdictional, and under today's test, the answer would be non-jurisdictional, but we're stuck because we previously spoke to it, then you might have a situation in which, you know, near identical, if not identical, statutory provisions that have the same text structure and even history related to this time bar question would have different legal results about the characterization, because some of them we had spoken to before, and we said jurisdictional. And the new ones, the ones that we hadn't spoke — maybe they're old. They're old. They were passed by Congress at exactly the same time, but we never had the question before us before about that provision. And that comes to us today, and we apply the new rule, because we don't have — and that seems to me a really messy and odd way, as we go through the test. You're bringing this question — I thought the question presented here was, is this jurisdictional? You're bringing it to us today, and we're going to apply the test we had today, and to the extent that it's different than what we said in the past, we just chalk it up to the fact that we have a new rule of decision. Yes, Your Honor, and the key is, this is a matter of statutory interpretation, and Erwin is — maybe presents a new canon of statutory interpretation, but the ultimate question is, what did Congress intend? And even — and yes, this Court has said it has to clearly state, so — but applying the general — the normal canons of statutory construction demonstrates that this is an affirmative defense. And one key aspect is that Congress originally proposed no statute of limitations for the Quiet Title Act. After some negotiations with the Department of Justice, it adopted one. But the Department of Justice said that it would — if it chose to dispute the statute of limitations, meaning that it's waivable, it would have the burden, meaning that it's an affirmative defense, and those are inconsistent with a jurisdictional rule. Mr. McCoy, let me just slip in one question before we run out of time. I guess I thought that when we started imposing this clear statement rule, we were correcting ourselves. We weren't trying to impose a new burden on Congress that maybe it didn't understand before. I thought we were saying we have been too loose with it because this is not what Congress has been intending. And if that's how you understand our new, you know, rule — I mean, I don't — clear statement — I thought it was supposed to be approximating what Congress had been doing all along, which makes this question of time lag different because it's not saying, hey, Congress, you have to, you know, line up behind what we say now. It's been saying, like, hey, Congress, we weren't quite getting what you were doing and you were not intending to establish jurisdictional rules. Am I understanding that in a way that — Yes, Your Honor, and that is how courts develop canons of statutory construction. It's really — it's always about what Congress intended, and I think the clear statement rule in that respect was just a recognition that Congress ordinarily is going to adopt the background principles for things like statute of limitations, and if it wants to diverge from that, it needs to be explicit. Thank you, Counsel. I just have one more follow-up on this time travel issue. You say it's a question of statutory interpretation. Back in the bad old days, when we had a statute to interpret, we looked at all sorts of stuff — you know, hearings, reports, testimony, all sorts of things, at some times to the expense of the actual language, which these days we look at much more carefully. Now, if we've interpreted the meaning of a statute — put aside statutes of limitations, just the meaning of a statute, and we look at what we did in 1950, and there the Court relied on all of this extra statutory material and said, based on that, this is what we think the statute means. Today, where we have a different approach, when that question comes up, are we supposed to go back and say, that was then, and this is now, and now we're going to look primarily at the plain language, and look, it gives us a different answer. Is that — is that what we do? Well, Your Honor, I think applying — looking at everything or applying at the language and the structure of the Act, it reaches the same conclusion, which is — Well, I know you think it does, but maybe for some of us, we don't think it does reach the same conclusion. Is the way we go about statutory interpretation today to wipe the slate clean and let's say we're going back to the beginning? Well, Your Honor, as Justice Barrett said, it's really — when this Court announced the clear statement rule, it wasn't announcing a rule. It was more just getting at what Congress was trying to do and guiding this Court's interpretation, not guiding Congress. And in that case, this Court is applying that candidate of statutory and construction when there is a rule and whether or not it's jurisdictional. Thank you. I see that I'm out of — Justice Thomas. Justice O'Meara. Justice Barrett. Justice Barrett. Justice Jackson. Okay. Thank you, counsel. Thank you. Mr. Snyder. Mr. Chief Justice, and may it please the Court. On two prior occasions, when the Wyatt-Title Act's 12-year time bar was squarely at issue, this Court held that the time bar imposed a jurisdictional limit on the Court's power to adjudicate the merits of property claims against the United States. Those decisions were clearly correct under then-governing law, and indeed, this Court later cited them as controlling authority for the settled principle that conditions on a waiver of sovereign immunity should be treated as jurisdictional. Petitioners now ask this Court to disregard its jurisdictional holdings in Block and Motaz, arguing that this Court's intervening decisions have made it harder to show that a restriction is jurisdictional, and that under the new test, the time bar here should be treated as just a claim-processing rule. For three reasons, the Court should reject that invitation. First, Block and Motaz reflected this Court's considered and binding judgment that the time bar was jurisdictional, and therefore merits stare decisis respect. In both cases, the Court cited earlier decisions that it recognized the strictly jurisdictional nature of comparable limits, and in both cases, the jurisdictional determination had concrete significance for the litigation before the Court. They were not mere drive-by jurisdictional rulings. Second, when Congress amended the Quiet Title Act in 1986, it ratified the jurisdictional determinations of not only this Court, but also of the Courts of Appeals, which had uniformly agreed that the time bar was strictly jurisdictional. Third, and finally, revisiting the time bar's jurisdictional status would cause unnecessary disruption. At a broad level, it would leave the lower courts confused about when they have to comply with this Court's applications of governing law. And at a narrower level, petitioners' rule would just delay the resolution of disputed timeliness questions, preventing the resolution as threshold issues, and instead requiring potentially meaningless trials on the merits of decades-old easements and property lines. Rather than bring about that confusion and inefficiency, the Court should adhere to its prior determinations in Block and Motaz, and affirm the decision below. I welcome the Court's questions. Could you reach the same result without relying on the precedent that you cite, just by reading the statute? So just by reading the statute, I think we would have a good argument that you should treat this as a jurisdictional requirement, and I'm happy to walk through the reasons why I think that's true. But candidly, nearly all of those reasons were rejected by this Court in Wong. Four justices thought they were persuasive, but five didn't, and we're not back making those same arguments. But to the extent that you think prior decisions of this Court control here, we think the relevant decisions are Block and Motaz, which speak to the precise statute of limitations that's at issue here. Can I ask, you said in your third reason that it would cause unnecessary disruption to the lower courts, and I guess I don't understand why that's the case. It seems to me the question is, you know, or the fact of the matter is that the lower courts would have to apply the old holdings unless and until this Court changes it, and the question is whether we should change it under these circumstances. So Justice Jackson, let me unpack a few things from that. The first is that I have taken petitioners to argue that they are not asking this Court to overrule any prior decisions, that they are just asking this Court to construe Block and Motaz narrowly to not actually mean jurisdiction. So the confusion that that would cause is that, on their view, the lower courts weren't required to adhere to Block and Motaz at all, all along. That's just because the dispute between the two of you is whether Block and Motaz really stand with. In a world in which we assume that this Court, using the prior methodology, actually held that it was jurisdictional, then I would assume all the lower courts and everyone else would have to abide by that until it got here, and the question for us would be, you know, now that we have a new test for determining jurisdictional nature of a statute, do we apply that new test and therefore change what we said before, or are we somehow bound by what we previously said? So Justice Jackson, I like that assumption. I think that's the real world. And what I would say is this Court addressed exactly that argument in John R. Sand and said that it is not inadministrable to have statutes that are worded in similar ways but that are in a way where this Court had previously interpreted the provision at issue. And I had taken my friend to disclaim any argument that he can satisfy the stare decisis factors to overrule this Court's decisions. Yeah. Mr. Siner, I mean, just on that point, I mean, we don't need a new test. We have a test. We have many, many decisions that have clearly stated what we do in this situation, the situation being we've used the word jurisdictional in the past, and what consequence does that have? And we've clearly stated, as you just said, that if we've really addressed the issue, decided the issue, then that controls. It has stare decisis effect. But if we've just kind of used the word without deciding the issue, then it, then that doesn't have stare decisis effect, and to the contrary, we disclaim any understanding that the thing was meant to be jurisdictional in the pure sense. So I guess you have to convince me that this is just more than using the word like we always use the word routinely to encompass mandatory claims processing rules. So Justice Kagan, I want to convince you of that. Let me just sort of put on the table that even if you don't agree with me on that, we have a ratification argument that we think could lead you to the same result. But let me start with the question you're asking. If you can't convince me of this first question, you're not going to convince me of the second question. Well, let me try even harder here. I think there are two things that this court can look to in deciding whether its earlier decisions were really definitive resolutions or were just sort of drive-by jurisdictional rulings. And if I could just interrupt, I mean, you are agreeing with the petitioner that the question is, do we have a definitive interpretation, a definitive resolution? That's the language we've always used or, you know, we've used for, you know, five, six cases in the past. Yes. Putting aside my ratification argument for again, I agree that on this part, that is the test. We think it's the resolution of this issue in both Block and Motaz was definitive. We think the first thing that you can look to is what the court cited in articulating its jurisdictional determination. And in both cases, the court cited earlier decisions that had used jurisdictional in the strict subject matter sense. So in Motaz, for example, the only case other than Block that the court relied on was the Sherwood decision that you mentioned, Justice Alito, which was a decision about jurisdiction under the Tucker Act in the district courts. And if you read that decision, it is thoroughly and strictly jurisdictional in the modern sense. You see, I guess, I mean, look, we can sort of, you know, try to find hints of this or that and, you know, go read the cited opinions. But I always thought that what we were looking for was in the case itself, it mattered whether something was jurisdictional or whether it was a claims processing rule. And we said, oh, we have this question. Does, you know, equitable estoppel apply? Does equitable tolling apply? To decide that question, we have to decide in, you know, is it really jurisdictional or is it just claims processing? And I don't see any of that in either of these two cases. So, Justice Kagan, I disagree with that. I think it's present in both. Let me walk through them. In Motaz, the way that I think that's present is if you look at page 840 of this court's opinion, the court goes out of its way to note that the government had apparently raised the Quiet Title Act's statute of limitations for the first time in its petition for rehearing en banc. Yes, you say that in your brief and I went to look at it and I was, oh, if that's true, that's meaningful. But then, you know, the opinion just notes it in the facts and never comes back to it. It's completely irrelevant to the questions that the body of the opinion decides. So, Justice Kagan, I just read the different, the decision differently than you, respectfully. The court notes that. It is a strange thing to note. Ordinarily, if you noted that, the sort of next thing you would do is engage with questions of whether the government had forfeited it. Instead, the first two sentences of the very next paragraph say, questions like this one go to a court's jurisdiction. And then the court just dives into the analysis of the statute of limitations question there without another word about the possibility of forfeiture. So we think that, combined with the fact that those decisions that it was citing in those next two sentences I mean, there's no indication that anybody even raised the question of waiver or forfeiture in that case, that anybody thought it was important. Justice Kagan, I think the fact that the court noted it in its opinion and then in the next paragraph We do a lot of gratuitous stuff. And, and, and all this was is the, is the last paragraph of the statement of facts. And the reason it's in the next paragraph that we use that it's, it's just, it's just the last thing that happened in the case. It's just fortuity that it's, it's in the next paragraph. Maybe I have more respect for the, the structure of the opinion than, than you do, or view it differently. You're, you're better positioned to know, I suppose. But Mr. Snyder, also, if you go back and look below, it seemed like in the Eighth Circuit, there was confusion in that case about whether the Quiet Title Act even applied. So the waiver issue, I mean, if you really want to dig in, not just to extraneous statements, but to what happened below, it's not clear that that was in the case. So, so Justice Barrett, I agree with that. And candidly, if, if we had needed to, I'm certain that we would have argued that it was not for, forfeited for other reasons. My point is just, the court didn't need to get into any of those reasons, because the court said, this wasn't raised until the petition for rehearing on Bonk. And to be candid again, the government had flagged it in a footnote in its panel stage brief. But the court says it apparently hadn't been raised, and then in the next paragraph says it's jurisdictional, and doesn't deal with any of those questions about whether... Maybe it had been, maybe it had been raised before, maybe it wasn't forfeited, but because the court made a mistake and proceeded on the premise of a mistake, we take that as jurisdictional. No, I don't think the court made a mistake at all. I mean, I think to, to take the Chief Justice's line of questioning earlier, I think at the time these cases were decided, it was clearly correct that conditions on a waiver of sovereign immunity were treated as going to the court's jurisdiction. And, and doing so... Irwin says something different, and this goes back to what Justice Jack Barrett said before, is, is, in fact, Irwin says, you know, you know, we, we don't think that when we said that, we don't think that we were representing really what Congress thought. And now we're going to correct it, and that's where Irwin comes from, saying, you know, this is actually a bad reflection of Congress's intent, and we're dropping it in favor of a better reflection of Congress's intent. So I, I think it's true that the court said that in Irwin. The court says that it had sort of taken an ad hoc approach to this, in this area. But both of the decisions that Irwin said sort of were on the other side of this, as treating these kinds of conditions as non-jurisdictional, were in 1985 and 1986. So they were after Block was decided. At the time that Block was decided, this court's precedents recognized that conditions on a waiver of sovereign immunity were, went to a court's jurisdiction. Now, in Irwin, the court said that. But I think it is just indisputably true that at the time that Block was decided, this court treated those limits as jurisdictional. And so the fact that the court said that at the time, we don't think was a mistake under the then-prevailing law. We think that accurately reflected this court's doctrine. The fact that this court later adopted a new test, that it applies on a prospective basis when it's addressing statutes that it hasn't previously encountered, doesn't change the meaning of the court's prior decisions applying that prior rule. We are often called upon to decide what we, in fact, held in a prior case, because that's important for stare decisis purposes. It arises in many different contexts, not just when we are interpreting a statute that refers to jurisdiction. Do you think that the test for determining what we held in a prior case, and therefore what is protected by stare decisis is different in this context, that special clarity is required here, or is it the same test that we use in other contexts? I think it's the same test that you use in other contexts. I don't think there's any reason to apply a different test in evaluating this court's jurisdictional decisions to determine whether there were holdings and what those holdings meant than in other contexts. And I acknowledge that there are cases where this court has used jurisdictional in a loose sense or has used jurisdictional just in the course of sort of describing the background of a statute. So in Fort Bend County, for example, this court was dealing with whether the charge filing requirement under Title VII went to the court's jurisdiction. And it acknowledged that in McDonnell Douglas it had described that as jurisdictional in sort of the background section of the opinion. But it hadn't been at issue there at all. And so the court said it wasn't bound by that. And you'd agree, just to follow up on Justice Alito's question, that when we are trying to figure out what we've held in a prior case versus what's extraneous, dicta, we've often cautioned parties against reading our opinions like statutes and giving talismanic effect to every word. So I agree with that, Justice Gorsuch. My colloquy with Justice Kagan earlier was intended to indicate that we think the jurisdictional nature of the statute of limitations here. You just think you clear that bar. We think we clear that bar. But you understand that no judge wants his or her work to be read for every last period, comma, jot, and tittle the way we'd read a statute. That's correct. I understand that. There's a degree of judicial humility required about our own past work. So I appreciate that. We think we do satisfy that bar. We think that, as I was talking about with Motaz, the significance there was not just in the use of the word. We think it was the fact that it used the word jurisdictional rather than dealing with forfeiture issues. If I could turn to Block and why I think the jurisdictional determination really mattered in Block as well, the court there cited earlier decisions that had used jurisdictional in the context of conditions on a waiver of sovereign immunity in a strict sense, including Soriano, for example, which is one of the cases that this court cited in John R. Sand. And then in the closing paragraphs of the court's opinion in issuing the mandate for what the courts below should do on remand, the court said that whatever the merits of the title dispute may be, the federal defendants are correct. If North Dakota's suit is barred by the statute of limitations, the courts below had no jurisdiction to inquire into the merits. If petitioners were right, what that sentence would have said is that the United States was entitled to judgment on an affirmative defense. Kagan. But I would think, Mr. Snyder, that that's exactly the kind of drive-by use of jurisdiction that we've talked about many times before. I mean, if you look at the page where the court does talk about Soriano, the court never uses the word jurisdiction there. This is 287. And in fact, what the court is saying is that we've been unclear about what interpretive principles to apply to, you know, statutes of limitations and other conditions on sovereign immunity. Do we strictly construe them and so forth? And so the issue on that page is really about how do we go about interpreting waivers of sovereign immunity? It's nothing about this jurisdictional question. And then on page 292, five pages later, it says, you know, the suit is barred and so the courts below had no jurisdiction. I mean, that's just the very standard thing that we've noticed in many of our opinions, which is that instead of saying, so the court shouldn't have addressed the issue, we say, so the court didn't have jurisdiction over the issue because we're not making a clear distinction between real jurisdiction and other reasons not to address issues. So Justice Kagan, again, I respectfully disagree. I think the fact that the court said they had no jurisdiction to address the merits had a great deal of significance there because the district court had already held a trial in the case. And so if petitioners were right, the most the United States would have gotten was a defense. And so the district court was not going to affirmatively quiet title in North Dakota. But North Dakota's hope was to keep those factual findings from the trial in effect in the hope that they could use them for preclusion purposes if the issue came up again in the future. Counsel, I'm sorry. Maybe I'm too simplistic. I think I might be. But in neither of those two cases, was there an issue of equitable tolling, equitable concealment, fraudulent estoppel? In each of them, in one of them it was, does the six-year statute apply or does the 12-year statute apply? So I have an almost impossible time understanding that the court was focused on, thinking about, believing it was ruling that this was subject matter jurisdiction in some firm way. Certainly, there are suggestions of it, but that wasn't the holding of Brown for sure. And Motaz was the same thing. Nobody was raising an equitable reason to toll. Everybody was just focused in on which statute applied. I don't understand. Why am I, why is my simplicity out of joint? I don't think it's simplicity. So in Motaz, we think that there was a question about forfeiture, and we think that the way the court addressed that question about forfeiture was rather than dealing with sort of the complicated posture of the court below. Well, the problem is, if it was forfeited, we had no reason to rule at all, meaning, if we take pure subject matter jurisdiction and the court thought it can be raised at any single time, that was the belief back then. So whether it was raised in a petition for rehearing, or it was raised even after a party could raise it at any point, and the court had to satisfy itself of jurisdiction, yet this court didn't. So, Justice Sotomayor, that last part is where I disagree with you. So what I'm arguing about Motaz is that if the court in Motaz had understood the statute of limitations to be non-jurisdictional, then the fact that the government had apparently pressed it for the first time in a petition for rehearing on Banc Below would have led the court to engage in a forfeiture analysis and decide whether it really— Why? If that's something you leave for the court below? That's not something you, as a court, can choose to ignore. If you raise lack of subject matter jurisdiction, we can't—we have to address that question. So that's exactly my point, that the reason this court addressed it was that this court understood it to go to subject matter jurisdiction. If this court had thought that it was non-jurisdictional, the court would have needed to talk about forfeiture. It didn't talk about forfeiture because, as it said in the very next paragraph, conditions like this one at the time went to subject matter jurisdiction. And the other thing I'd say is that I think it's a little unfair to sort of critique these opinions because they didn't go on at length about— Isn't that what we have said in Wong and Irwin? We've depended on whether the court has spoken to the issue. So unless we have a clear statement that that was what was litigated, why would we try to give stare decisis to issues that weren't identified by the court? I mean, so in Motaz, the court says that conditions on a waiver of sovereign immunity go to the statute of limitations in a case where the statute of limitations here was at issue as among those conditions. And then, for the reasons I've explained, we think it was directly at issue there. The point I was going to make about the court not going on at length about this is it sort of creates this strange world where points that were very obvious and straightforward at the time get less respect today. At the time, it was obvious that this was a question of jurisdiction because that was the prevailing rule that this court applied. Well, that, again, is relitigating, I think, Irwin. But I mean, just one way to think about it is take the case where we do say, look, there's a rule here, we've said it, John R. Sand, you know, and so we have to respect our precedent. So the reasons that John R. Sand gives for that, it goes through two opinions at great length, two prior opinions, saying that the plaintiff had asked for equitable tolling or that there was a question of waiver. And in each of those two cases, it would have made a difference whether the rule was jurisdictional in the strict sense or not. And that's the kind of proof that we've required. In other words, you know, we've, you know, look back. This mattered to the court, and the court fully considered it. And if we were to write the opinion coming out your way, we couldn't do anything that comes close to what John R. Sand looks like. So Justice Kagan, again, I just respectfully disagree. I think it didn't matter in the same ways in Block and Motaz that it did in the cases that the court cited in John R. Sand, but it mattered. It allowed the court to deal with the issue without concerning itself with forfeiture in Motaz. In Block, it dictated the course of the proceedings on remand. On remand, North Dakota tried to keep the findings of fact that had been entered in the earlier trial, but the Eighth Circuit, sort of a contemporaneous understanding of this court's decision in that very case, said, no, this issue is jurisdictional, and therefore the proper remedy, even though there's already been a trial, is to remand to the district court and dismiss the complaint, notwithstanding the fact that there had already been a trial. A few years later, after Congress amended the Quiet Title Act, North Dakota was able to sue again, and this time around, because those findings had been vacated, the United States was successful on the merits, whereas previously it had been unsuccessful. So the jurisdictional treatment was dispositive of the conflict at issue there. Justice Kagan said you were relitigating Irwin. I just want you to know that I would intently listen to such an argument. But I think it's the amicus in this case that suggested there were other consequences to whether this provision was jurisdictional than the equitable tolling or equitable estoppel. And one of them was that the government, I don't know if it won't or can't, enter in the settlement negotiations if the bar is jurisdictional. And I wanted to find out what exactly the government's position was on that. So I think that it's true that if the bar is jurisdictional, the government would not be able to enter into pre-litigation agreements to toll the statute of limitations. But in those circumstances- Well, I guess it wouldn't say it's to- question the predicate, saying if it's true that it's jurisdictional, then you can't do this. But what if the whole point is the jurisdictional aspect is being litigated? Like here, could you enter into negotiations here and settle this case? Because whether it's jurisdictional or not is up in the air. So we could settle this case. My understanding of the amicus's argument was not that it would preclude settlements, but that it would force parties to sort of bring these things up earlier because the government couldn't agree to a tolling arrangement. Now, we don't think that's a serious concern because the quite frankly, the Right Title Act already provides a generous 12-year statute of limitations. We think that's ample time once you know or should know of your claim to reach a resolution of that claim with the government without meeting a tolling agreement. And if you run up to that bar, it would be possible to file suit and then ask a court to stay the litigation while you try to negotiate it. But I do want to address some of the other consequences of the jurisdictional versus non-jurisdictional line. One of those deals with the practical consequences of petitioners' position in litigating Quiet Title Act cases. If you look at pages 18 and 19 of our brief in opposition and 19 and 20 of our merits brief, we point to nine different courts of appeals that have all treated this rule as jurisdictional, in some cases going back decades. And in those circuits, when a timeliness question comes up, that timeliness question can be resolved at the outset of the case. We think that's important because, as this court explained in Block, one of the primary reasons the executive branch was so insistent on having a 12-year statute of limitations in the Quiet Title Act was a concern about the burden on the executive branch of needing to litigate stale claims. So — Well, but one could make that argument with respect to any statute of limitations. It always serves the value of repose. But we have to respect what balance Congress struck, not what balance we might prefer. And one can make an argument that it also serves some useful value to not have a strict statute of limitations as a jurisdictional bar. Right? I mean, you can see there are policy arguments on the other side, I'd assume. So I think the policy arguments on the other side are especially weak in this case. Oh, I'm sure you do. I'm sure you do. But you'd agree that a rational Congress could disagree with that. I would agree that a rational Congress should — could disagree with that. I don't think a rational Congress — Should, of course. I understand. But could. And so why isn't that the end of the policy arguments? So because, respectfully, this Court has looked to those policy arguments in explaining why it's particularly reluctant to treat provisions as jurisdictional. And so I think it's relevant here that those policy arguments just apply with less force or cut in a different direction in the Quiet Title Act context. There are two things in particular that I'd point to. The first is that in Arbaugh, one of the reasons that this Court gave for was that that line can affect the decision-maker that decides any disputes of fact. But in the Quiet Title Act, whether this is resolved at the 12b1 stage or after trial, it's going to be resolved by the exact same decision-maker. Justice Sotomayor, you were asking about what difference this will make in the case. The reality is that the district court here has already looked at all of the timeliness — all of the timeliness evidence. I don't think it disregarded that evidence.  I'm not sure how that cuts. You're saying it's going to be very efficient either way? No, I — The district court's going to be able to get to this rather promptly, whether it's 12b1 or a motion for summary judgment. It's going to be before the judge. You don't have to go to a jury. It's just going to be who bears the burden. And I understand the government would prefer not to carry the burden, but that's just policy talk, right? No, I don't — I don't think so. The burden, I don't think, matters very much. It will matter in the cases where the evidence is completely in equipoise. But other than that, that burden question, I don't think, is going to be significant. The concern that I'm identifying is the one that this Court talked about in Block as leading to adoption of the statute of limitations, which is a concern about the burden of litigating stale claims. Well, what do we do about the government's own representations when it proposed this 12-year statute of limitations that suggested if the government chooses to raise the issue, which is a suggestion that the government itself — now, I understand the government can change its views. I understand. But the government itself, at least at one time, thought this was something other than subject matter jurisdiction when it proposed the law. So, Justice Gorsuch, if you want to consider the legislative history — I'm — I thought that might be effective. I'm asking you about the government's own positions. We understand those representations very differently. What the government said was that the plaintiff would merely need to allege that he didn't know or had no reason to know of the claim. Now, on their view, the plaintiff wouldn't even need to allege that. If this is an affirmative defense, it doesn't — the plaintiff doesn't need to say anything at all about it. What about the subsequent sentence? So, I mean, in another world, if the sentence were written differently, I suspect we'd be — have a call for deference to it. Instead, it's — you're running away from it. So what about that other sentence? I'm not running away from it at all. What we said in that next sentence was if the plaintiff makes that representation, then the government would have the burden of overcoming it. And I think that's absolutely true. I mean, once you have a case where on one side of the ledger you have the plaintiff's declaration that he didn't know and couldn't know about the existence of the government's claim, then, of course, now that you've got evidence on one side, the government needs to come forward with evidence on the other side. I don't think that's — The burden would always rest with the plaintiff if it's jurisdictional, though. The burden of persuasion. Yes. The burden of persuasion. I don't think that that letter was speaking in precise terms about the burden of persuasion. Ah, so the government's letter wasn't speaking precisely. Okay, thank you. I mean, the government's letter was talking about the — I'm sorry, I see my time has expired. You can finish your sentence. I was speaking about burdens. We think that the burdens to be concerned with are the burdens of litigating stale claims, which Petitioner's rule would require a trial for. Justice Thomas, Justice Alito, what do you make of the 1986 amendments? So, Justice Alito, at the time that Congress adopted those amendments, every single one of the courts of appeals to have addressed this issue had held that the statute of limitations was jurisdictional. My friends say that they were just sort of using language loosely. That's not true. If you look at the decisions that we cite at 19 and 20 of our brief, the First Circuit had held that because this went to jurisdiction, it was required to raise it sui spontane on appeal. The Third Circuit held the same thing. The Eighth Circuit on remand and block held that because it was jurisdictional, the remedy was to remand and dismiss the complaint, even though there had already been a trial. So, we think Congress is presumptively aware of those decisions. And then you have the additional fact that this court had, in Block and Motaz, described this limit as jurisdictional. And even if you didn't think that those were square holdings of the court, I  think that the court hasn't encountered in prior cases and make it that much more obvious that Congress, when it acted to amend the statute of limitations in direct response to Block, but did nothing to displace this jurisdictional treatment, intended to ratify that treatment. Justice Sotomayor? Really? Justice Kagan? We wasted a lot of time in Begley, if you're right. And if you're right in Begley, we could have issued a summary opinion just citing these two cases. But we didn't do that. You know, we said, is equitable tolling available under the Quiet Title Act? And we went through an extended analysis of the text, of the history, and we addressed that question. If you're right, we had two precedents saying equitable tolling was not available because this is jurisdictional. So, Justice Kagan, of course, the holding in Begley fully supports us here. The fact that equitable tolling That's not the question, Mr. Steiner. The question is, why was all of that opinion necessary? So, at the time that this court decided Begley, it was, frankly, unclear what the court had done in Irwin. So, I mentioned earlier that one of the decisions Block relied on was Soriano. Justice White's separate opinion in Irwin disagreed with the majority's new presumption. And one of the things he said was that it directly overruled Soriano. And so, when Well, there was a dissent, but Irwin Absolutely, it was a dissent. But I'm saying, at the time that Begley was decided, I think there was a real about whether this court's pre-Irwin decisions survived Irwin or not. Well, you know, if that's right, and I don't really think it is, but if it's right, then the court might have said something like that. And, but nobody addressed this question. Nobody thought that these two opinions had anything to do with this question. So, Justice Kagan, we made the judgment to just argue that even under Irwin, it was abundantly clear that Congress did not intend courts to equitably toll the statute of limitations. And I, I think the fact that it's so clear that Congress didn't intend to allow equitable tolling is a, you know, a factor on the scale in, in thinking that Congress really did intend this to be jurisdictional. Thank you. Justice Gorsuch. Yes, Captain. Justice Barrett. Justice Jackson. Yes, so I, I realized that under John R. Sands, the question that we're all debating now is whether the prior cases were definitive holdings that the quiet title acts time bar is jurisdictional. Can I just, for a second, ask you to hypothesize a world in which we didn't have a prior case about this issue. And so we were applying what we now understand to be the way in which you were applying what Congress intended about the jurisdictional nature of this. In that world, is the government's position, and I wasn't quite clear from pages 12 and 13 of your brief, is the government's position that this would be jurisdictional under the current test? So, Justice Jackson, let me identify the, the sort of four things that we would point to as supporting a jurisdictional treatment here. I will, I will front that the court rejected three of them in Wong. So I don't know if Wong sort of goes or stays in your hypothetical, but let me put them on the table at least. The first is that the language here bears a marked similarity to the language of the Tucker Act statute of limitations that this court had held for well over a century was jurisdictional. The second is that to the extent there's a difference between this language and that language, it cuts in favor of treating this language as jurisdictional. The Tucker Act provision said every claim shall be barred. This provision says any civil action shall be barred. And so the, the difference there is that this provision is speaking more to the court's power to adjudicate the claims than to the underlying merits of the claims. That would point, that's the one that was not at issue in Wong. The third is that this language is definitive. It doesn't invite Congress to, or it doesn't invite the courts to make exceptions. And the fourth is that this arose in the context of a waiver of sovereign immunity, which the court at the time that this statute was passed in 1972 had repeatedly said conditions on a waiver of sovereign immunity go to the court's jurisdiction. Now again, the court rejected most of those in Wong, and candidly, I don't think the one more that we've added here would have changed the outcome in Wong, but those are, those are what we would point to.  Thank you, counsel. Mr. McCoy, rebuttal. Thank you, Mr. Chief Justice. On the point about congressional acquiescence, as this court said in Alexander, appellate court's interpretations provide little weight in the interpretive process of what Congress meant, and that inaction is not an acquiescence to it. And as for the lower, the appellate court's opinions on how they treated it, as Justice Gorsuch said yesterday in oral argument, appellate courts say a lot of things that does not make it stare decisis on this court. And ultimately, the question is, what did Block and Motaz say? And I, my friend's rule would make it more confusing for lower courts. So we spend a lot of time digging deep into what Motaz said, even looking at oral arguments. But the, what this court has said in John R. Sand, and as Justice Kagan said, it's, is it a definitive earlier statement? Was it the holding? That is a clear factor for lower courts to decide if they are presented with an issue like this. They don't have to go in. I'd also like to address in the, the forfeiture argument, although I think, again, it was not in the holding, but the plaintiff there forfeited any argument. As this court recognized, the plaintiff did not, did not bring the claim under the Quiet Title Act at this court. In opening statements, plaintiff's counsel said, this case has to rise and fall as a General Lockman Act claim. This is not a Quiet Title Act claim. So in that, they forfeited any arguments about whether or not the, the government had waived or forfeited anything about, about whether it was, whether this Quiet Title Act was waived. Finally, I would just like to, the important thing is, Justice Corsage was getting at, is that this, what did Congress intend? And although Justice Corsage may not want to look at the legislative history, the Senate report makes it clear. There was grave inequities. There was grave inequities because property owners could not bring these claims to resolve these disputes. And so it passed the Quiet Title Act to resolve those grave inequities. And it wants these property disputes to be resolved. And making it jurisdictional makes it harder to resolve those claims. There are no further questions. Thank you. Thank you, counsel. The case is submitted.